NIMA GHARAVI
4610 North Clark St. #1098
Chicago, IL 60640
+1 (773) 899-4688
dmca@midwestwrestle.com

Movant *Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DMCA SECTION 512(h) SUBPOENA TO DYNADOT INC. | Case No.: 3:25-mc-80138-TLT<br><br>UNOPPOSED NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH DMCA SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>**Date:** Tuesday, August 5, 2025<br>**Time:** 2:00 p.m.<br>**Courtroom:** 9, 19th Floor, San Francisco<br>**Judge**: Hon. Trina L. Thompson |

## NOTICE OF MOTION AND MOTION

TO DYNADOT INC. AND ALL PARTIES OF RECORD:

**PLEASE TAKE NOTICE** that on Tuesday, August 5, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, Movant Nima Gharavi will and hereby does move this Court for an order compelling Dynadot Inc. to comply with the DMCA subpoena served pursuant to 17 U.S.C. § 512(h).

This motion is made pursuant to Federal Rules of Civil Procedure 37 and 45, Civil Local Rule 37-1, and 17 U.S.C. § 512(h), and is based upon this Notice of Motion and Motion, the accompanying Gharavi Decl., all papers and pleadings on file herein, and such oral argument and evidence as may be presented at the hearing.

## PROCEDURAL NOTE

This motion is being re-noticed for hearing before Judge Thompson following reassignment from Magistrate Judge Kim. The underlying motion and supporting materials remain unchanged.

## STATEMENT OF RELIEF REQUESTED

Movant respectfully requests that this Court enter an order:

1. Determining whether domain name registrars are authorized and ordered to reply to DMCA subpoenas issued pursuant to 17 U.S.C. § 512(h) regardless of claimed safe harbor protections under other DMCA provisions;
2. Compelling Dynadot Inc. to provide complete compliance with the DMCA subpoena, including all requested domain registration information and IP address history for the specified time period; and
3. Granting such other relief as this Court deems just and proper.

This motion is filed as unopposed based on Dynadot's explicit commitment not to object. Contingent upon Dynadot honoring this commitment and not filing opposition papers, Movant commits that it will not seek reimbursement of expenses or attorney's fees under Fed. R. Civ. P. 37 or Civil L.R. 37-1(a) in connection with this motion.

Dated: July 17, 2025

Respectfully submitted,

/s/ Nima Gharavi

Nima Gharavi

Movant *Pro Se*

## STATEMENT OF ISSUE TO BE DECIDED

Whether domain name registrars, as defined by the Internet Corporation for Assigned Names and Numbers,[1] are subject to identification subpoenas under 17 U.S.C. § 512(h) when they claim transmission safe harbor protection under 17 U.S.C. § 512(a), and whether registrars' maintenance of domain registration databases qualifies them as providers of "Information Location Tools" under 17 U.S.C. § 512(d), thereby establishing their obligation to comply with such subpoenas regardless of other safe harbor claims. This appears to be a novel question, as Movant can find no caselaw explicitly addressing this issue. Movant intentionally raises this question broadly, as **a matter of public interest**, because clarification would benefit not only the instant matter, but all DMCA subpoenas issued to domain name registrars.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This matter concerns Dynadot Inc.'s refusal to provide complete compliance with a properly issued DMCA subpoena, claiming immunity under the transmission safe harbor provision of 17 U.S.C. § 512(a). This Court has already addressed analogous issues involving domain name registrars in *Visual Supply Company v. Khimji*, No. 3:24-mc-80159-SK, Dkt. 18 at 6 n.4 (N.D. Cal. Jun. 25, 2025), where similar arguments based on transmission safe harbor theories were rejected. The established legal framework, consistent judicial practice across multiple federal districts, Dynadot's own business operations, and the fundamental technical distinctions between domain name registrars and pure transmission ISPs all demonstrate that domain name registrars are subject to DMCA identification subpoenas regardless of claimed transmission safe harbor protections.

### II. PROCEDURAL BACKGROUND

Movant served a DMCA subpoena on Dynadot seeking domain registration

---

[1] ICANN FAQ Page: FAQs for Registrants: About ICANN, ICANN (Feb. 25, 2019), https://www.icann.org/resources/pages/about-icann-faqs-2019-02-25-en

information and IP address history for the specified domain and time period. *See* Dkt. 2 (subpoena); Dkt. 1 at 9 (Attachment A); Gharavi Decl. ¶ 2. Dynadot provided partial compliance with the subpoena, producing registration data for the domain owner who held the domain during a period when infringement occurred (June through December 2023) as well as current account contact information. Gharavi Decl. ¶ 3, Ex. B. However, Dynadot refused to provide complete compliance with the subpoena, specifically declining to produce the requested IP address logs, while claiming protection under the "transitory communications safe harbour under the DMCA" and stating they "will not provide any other user data absent an applicable court order." Gharavi Decl. ¶ 4, Ex. A. Dynadot explicitly stated they "will not object to this order so long as no amounts are sought against Dynadot." *Id.*

Movant attempted to meet and confer pursuant to Civil L.R. 37-1(a), offering to "schedule a teleconference at your earliest convenience to meet and confer pursuant to Fed. R. Civ. P. 37 and N.D. Cal. L.R. 37-1(a)." Gharavi Decl. ¶ 8, Ex. A. When Movant subsequently stated his interpretation that Dynadot was "declining to meet and confer regarding my subpoena request" and invited correction "if this interpretation is incorrect," Dynadot declined to engage in meaningful discussion, necessitating this motion. *Id.*

## III. THIS COURT'S ANALYSIS IN *VISUAL SUPPLY COMPANY v. KHIMJI* SUPPORTS REJECTING DYNADOT'S SAFE HARBOR ARGUMENT

This Court's reasoning in its Report and Recommendation in *Visual Supply Company v. Khimji*, No. 3:24-mc-80159-SK, Dkt. 18 at 6 n.4, directly supports rejecting Dynadot's transmission safe harbor argument. In that case, Khimji moved to quash DMCA subpoenas to Cloudflare, Patreon, and NameSilo, arguing the subpoenas were improperly sought because the underlying complaint alleged trademark infringement rather than copyright infringement. In support of his motion, Khimji cited *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233 (D.C. Cir.

2003) and *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 777 (8th Cir. 2005).

**This Court explicitly rejected the applicability of those cases**, stating: "… neither of which are applicable here." This Court distinguished domain name registrars such as NameSilo from ISPs acting as mere conduits, noting that *Recording Industry* dealt with ISPs "acting only as a conduit for data transferred between two internet users" and *Charter* involved ISPs whose "function was limited to acting as a conduit for the allegedly copyright protected material."

**This reasoning directly applies to Dynadot's argument.** Dynadot claims protection under the same transmission safe harbor provisions that the *Verizon* and *Charter* cases addressed. This Court's explicit finding that those precedents are not applicable when dealing with domain name registrars provides direct support for rejecting Dynadot's identical safe harbor claim.

## IV. FEDERAL COURTS CONSISTENTLY TREAT DOMAIN NAME REGISTRARS AS SUBJECT TO § 512(h) SUBPOENAS

Multiple federal courts across different circuits have consistently issued and enforced § 512(h) subpoenas against domain name registrars without analyzing claimed transmission safe harbor defenses. This consistent judicial treatment demonstrates that domain name registrars occupy a different legal position than pure transmission ISPs.

**A. Judicial Economy Analysis Demonstrates Registrars Are Not Protected by § 512(a)**

**Arizona District Court**: In *Baugher v. GoDaddy.com LLC*, No. 19-mc-00034-PHX-JJT, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021), the district court thoroughly contemplated a motion to quash a DMCA subpoena served upon GoDaddy (a direct competitor to Dynadot), analyzing the nature of the speech, whether a prima facie case of copyright infringement had been established, evaluating the four fair use factors, and finally, a balancing of harms. If domain name registrars were, as Dynadot contends, beneficiaries of the safe harbor afforded in § 512(a), the court could have simply ruled

the subpoena invalid on those grounds alone, and in the interest of judicial economy, would not have had to reach any of the above conclusions. The court's extensive constitutional analysis would have been unnecessary and wasteful if GoDaddy enjoyed § 512(a) protection.

**Northern District of Illinois**: In *CME Grp. Inc. v. Nagovskiy*, No. 19-cv-01621, 2019 WL 13252902, at *2 (N.D. Ill. Mar. 7, 2019), plaintiffs alleged both trademark and copyright infringement, and in lieu of seeking leave of the court for expedited discovery, plaintiff explicitly sought "a subpoena pursuant to 17 U.S.C. § 512(h), compelling each Defendant to expeditiously disclose to CME Group or any person authorized by CME Group, information sufficient to identify Defendants." The court, having determined that "Defendant GoDaddy.com, LLC provided the domain name registration services associated with the Infringing Domain Names," ordered "that a subpoena be issued pursuant to 17 U.S.C. § 512(h), compelling Defendants GoDaddy, OVH, and Webzilla to expeditiously disclose to CME Group or any person authorized by CME Group, information sufficient to identify Defendants." If domain name registrars such as GoDaddy "enjoy[] the transitory communications safe harbour under the DMCA," the court could not and would not have acceded to such a prayer for relief.

**Multiple Federal Districts**: Courts have consistently issued § 512(h) subpoenas to domain name registrars without analyzing transmission safe harbor defenses. For example, in *In re DMCA Section 512(h) Subpoena to Namecheap, Inc.*, No. 20-cv-6606, 2020 WL 9607990, at *1 (N.D. Ill. Dec. 3, 2020), the magistrate issued a Report and Recommendation finding that "the notification satisfies the provisions of 17 U.S.C. § 512(c)(3)(A)" and the district court adopted the recommendation and granted the petition. Similarly, the Middle District of Florida reached the same conclusion regarding Namecheap in *In re Namecheap, Inc.*, No. 8:22-MC-39-TPB-MRM, 2022 WL 17326553 (M.D. Fla. Nov. 14, 2022), report and recommendation adopted, No. 8:22-MC-39-TPB-MRM, 2022 WL 17282733 (M.D. Fla. Nov. 29, 2022). In neither case did the courts consider whether the domain name registrar might be exempt under

transmission safe harbor protections, demonstrating the consistent judicial treatment of registrars as appropriate targets for § 512(h) subpoenas.

## V. THE NOTIFICATION REQUIREMENT DISTINGUISHES DOMAIN NAME REGISTRARS FROM PURE CONDUITS

The core legal principle that distinguished the *RIAA* and *Charter* cases was their focus on **the notification requirement as the distinguishing factor**. These notification provisions make up the heart and soul of the *RIAA* opinion and the majority opinion in *Charter*. As the *Charter* court explained:

> *Significantly, one of the items to be included in any subpoena request is "a copy of a notification described in subsection [512] (c)(3)(A)." 17 U.S.C. § 512(h)(2)(A). This notification is a mandatory part of the subpoena request and a condition precedent to the issuance of a subpoena because the statute further provides, as the "[b]asis for granting subpoena," that "the notification filed satisf[y] the provisions of subsection (c)(3)(A)." 17 U.S.C. § 512(h)(4).*

*Charter*, 393 F.3d at 775.

The *RIAA* court elaborated:

> *The storage activities described in the safe harbors of §§ 512(b)-(d) are subject to § 512(c)(3), including the notification described in § 512(c)(3)(A). By contrast, as we have already seen, an ISP performing a function described in § 512(a), such as transmitting e-mails, instant messages, or files sent by an internet user from his computer to that of another internet user, cannot be sent an effective § 512(c)(3)(A) notification. Therefore, the references to § 512(c)(3) in §§ 512(b) and (d) lead inexorably to the conclusion that § 512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a).*

*Recording Industry*, 351 F.3d at 1237.

**Domain Name Registrars Can Receive Effective DMCA Notifications:** Unlike pure transmission ISPs, domain name registrars **can and do receive** effective § 512(c)(3)(A) takedown notifications regarding domain name misuse, websites hosted on domains they manage, and copyright-infringing content associated with their registered domains. Domain name registrars regularly process and act upon DMCA takedown

notices, demonstrating they can receive an effective § 512(c)(3)(A) notification. Gharavi Decl. ¶ 5, Ex. C.[2]

Thus, even if the *RIAA* and *Charter* opinions were to become controlling in the Ninth Circuit, they would still be unavailing to § 512(d) domain name registrars seeking to avoid compliance with § 512(h) because the notification provisions of 17 U.S.C. § 512(c)(3)(A) can be satisfied.

## VI. DOMAIN NAME REGISTRARS PROVIDE § 512(d) INFORMATION LOCATION SERVICES, NOT § 512(a) TRANSMISSION SERVICES

The technical distinction between domain name registrars and pure conduit ISPs is fundamental to the DMCA framework and demonstrates why Dynadot's transmission safe harbor argument fails.

### A. Domain Linking Function Constitutes Information Location Services

The RIAA court observed that § 512(d) "provides a safe harbor from liability 'for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools' such as 'a directory, index, reference, pointer." *Recording Industry*, 351 F.3d at 1234. At a minimum, domain name registrars are directories that sell index services, enabling business owners to purchase user-friendly domain names such as "www.visual-supply-company.com". In many cases, registrars such as Dynadot also offer hosted Domain Name System (DNS) servers that further facilitate the referral process by linking those domain names to device-friendly Internet Protocol (IP) addresses such as "172.16.0.1", thereby pointing consumers' devices to the information necessary to locate infringing material. Gharavi Decl. ¶ 6, Ex. D.[3]

### B. Functional Separation from Pure Transmission ISPs

That is where a domain name registrar's involvement in the scenario ends, since they are

---

[2] Dynadot Abuse Reporting Page: How To Report Abuse, Dynadot, https://www.dynadot.com/report-abuse (last visited June 30, 2025).
[3] Dynadot DNS Setup Page: Set Up DNS, Dynadot Community Help, https://www.dynadot.com/community/help/question/set-up-DNS (last visited June 30, 2025).

not "ISP[s] acting as a mere conduit for the transmission of information sent by others." *Recording Industry*, 351 F.3d at 1237. That responsibility falls to § 512(a) ISPs such as Verizon and Charter Communications who have built the physical networks that "transmit, route, or provide connections" which actually transport the infringing material between server hosts and consumers. *Charter*, 393 F.3d at 775.

### C. Practical Application of DMCA Notice and Takedown

If a nefarious actor were to register a substantially similar domain name such as "www.visual-supply-company.com" that duplicates in whole or in large part the content on "www.visualsupplycompany.com" which is likely to create consumer confusion, the *Charter* and *RIAA* courts would argue that it would be impossible for Visual Supply Company to satisfy the notification provisions of 17 U.S.C. § 512(c)(3)(A) if sent to a § 512(a) ISP such as Charter or Verizon because,

> *The absence of the remove-or-disable-access provision (and the concomitant notification provision) makes sense where an ISP merely acts as a conduit for infringing material—rather than directly storing, caching, or linking to infringing material—because the ISP has no ability to remove the infringing material from its system or disable access to the infringing material.*

*Charter*, 393 F.3d at 776.

Conversely, both the *Charter* and *RIAA* courts concede that it **would** be possible for Visual Supply Company to satisfy the notification provisions of 17 U.S.C. § 512(c)(3)(A) if sent to a § 512(d) linking service such as Dynadot because,

> *the ISP activities described in §§ 512(b) and (d) are storage functions. As such, they are, like the ISP activities described in § 512(c) and unlike the transmission functions listed in § 512(a), susceptible to the notice and take down regime of §§ 512(b)-(d), of which the subpoena power of § 512(h) is an integral part.*

*Recording Industry*, 351 F.3d at 1237.

In other words, the § 512(d) domain name registrar in this hypothetical scenario could disable access to the infringing website at "www.visual-supply-company.com" by disabling its index record that links the domain name to its authoritative DNS servers.

## VII. DYNADOT ALSO PROVIDES HOSTING SERVICES UNDER § 512(c)

Unlike a barebones domain name registrar, Dynadot is also a valid recipient of § 512(h) subpoenas because it is also engaged in hosting functions under § 512(c). The *Recording Industry* court recognized that § 512(h) applies to ISPs engaged in storage functions, including hosting services under § 512(c). *Recording Industry*, 351 F.3d at 1237. According to Dynadot's own website, they provide comprehensive web hosting services:

- "Is web hosting required? No additional web hosting is required. Our Website Builder plans include free hosting with 99.9% uptime, ensuring stability and security for your site." Gharavi Decl. ¶ 7, Ex. E.[4]
- "Dynadot's web hosting. While Dynadot has discontinued it's [*sic*] own hosting plan, you can still create your website on your domain names through our website builder. Our website builder comes with free web hosting, allowing you to use our drag-and-drop builder to create a stylish, unique website without having to worry about setting up your website hosting configuration." Gharavi Decl. ¶ 7, Ex. F.[5]
- "How do I add a web hosting plan to a domain in my Dynadot account? Dynadot offers Website Builder with built-in hosting, which offers customers a simple way to drag and drop their way to a beautiful website." Gharavi Decl. ¶ 7, Ex. G.[6]

This comprehensive service offering makes Dynadot's transmission safe harbor argument even more untenable, as they clearly operate well beyond the narrow § 512(a) conduit functions.

## VIII. ESTABLISHED PRACTICE DEMONSTRATES REGISTRAR OBLIGATIONS

---

[4] Dynadot Hosting Setup Page: Add Hosting, Dynadot Community Help, https://www.dynadot.com/community/help/question/add-hosting (last visited June 30, 2025).
[5] Dynadot Website Builder Page: Website Builder, Dynadot, https://www.dynadot.com/website-builder (last visited June 30, 2025).
[6] Dynadot Hosting Plan Blog Post: Choosing a Hosting Plan, Dynadot Blog, https://www.dynadot.com/blog/choosing-a-hosting-plan (last visited June 30, 2025).

The established practice of issuing § 512(h) subpoenas to domain name registrars without safe harbor challenges further demonstrates that Dynadot's argument lacks merit. Courts have routinely issued such subpoenas to major registrars across multiple federal districts over fifteen years, including:

- *In Re DMCA Subpoena to Name.com, Inc.*, No. 8:25-mc-00320 (D. Md. 2025)
- *Tamaris (Gibraltar) Limited v. **Dynadot** Inc.*, No. 8:23-mc-00418 (D. Md. 2023)
- *In Re: Name.com Inc*, No. 3:23-mc-05014 (W.D. Wash. 2023)
- *Pit Barrel Cooker Company, LLC v. **Dynadot**, LLC*, No. 3:21-mc-80243 (N.D. Cal. 2021)
- *In Re: Subpoena to Cloudflare, Inc., GoDaddy.com, LLC, Name.com, Inc., Namecheap, Inc., NameSilo, LLC, and Google, LLC*, No. 1:21-mc-00262 (D. Haw. 2021)
- *RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. v. **Dynadot** LLC*, No. 1:19-mc-00118 (D.D.C. 2019)
- *RECORDING INDUSTRY ASSOCIATION OF AMERICA v. **DYNADOT** LLC*, No. 1:15-mc-00933 (D.D.C. 2015)
- *American Petroleum Institute v. Name.com*, No. 1:10-mc-00044 (D. Colo. 2010)

If Dynadot's transmission safe harbor argument had merit, this extensive practice across different registrars, federal districts, and time periods would have prompted legal challenges by now, especially given the sophisticated legal representation typically available to major registrars.

## IX. COMPLETE INFORMATION IS NECESSARY FOR MEANINGFUL COPYRIGHT ENFORCEMENT

While Dynadot provided registration data, this partial compliance is insufficient for meaningful copyright enforcement. Without IP address history, Movant cannot verify the accuracy of the registration information or obtain corroborating evidence from Internet Service Providers. Registration data submitted by potentially bad actors is inherently suspect and requires corroboration through independent sources. IP address

history allows verification of the accuracy of provided contact information, tracing the actual users behind domain registration, building a complete timeline of domain usage, and identifying patterns of behavior. This renders the partial production inadequate for its intended purpose under § 512(h)—enabling copyright holders to identify and pursue alleged infringers with confidence in the reliability of the information obtained.

**CONCLUSION**

This Court's analysis in *Visual Supply Company v. Khimji* strongly supports rejecting transmission safe harbor arguments when dealing with domain name registrars. This Court already found that *Recording Industry* and *Charter* are not applicable in the domain name registrar context. Multiple federal courts consistently treat domain name registrars as subject to § 512(h) subpoenas, and the technical distinction between DNS linking services and pure transmission functions supports this legal framework.

Dynadot has explicitly committed not to oppose this motion, and this motion is filed based on that commitment. For the foregoing reasons, Movant respectfully requests that this Court:

1. Declare that domain name registrars qualify as providers of "Information Location Tools" under 17 U.S.C. § 512(d) and are therefore subject to identification subpoenas under 17 U.S.C. § 512(h) regardless of any claimed safe harbor protections under other DMCA provisions; and
2. Based upon that determination, grant this unopposed motion and order Dynadot to provide complete compliance with the DMCA subpoena.
3. Granting such other relief as this Court deems just and proper.

Dated: June 30, 2025

Respectfully submitted,

/s/ Nima Gharavi
Nima Gharavi

Movant *Pro Se*